# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| STINGRAY MUSIC USA, INC., § <br> § <br> Plaintiff, § <br> § <br> v. §     C.A. No: <br> § <br> MUSIC CHOICE, § <br> § <br> Defendant. § <br> § | |

## STINGRAY MUSIC USA, INC.'S ORIGINAL COMPLAINT

Plaintiff Stingray Music USA, Inc. ("Stingray"), by its attorneys of record, with knowledge as to its own acts and status and belief as to the acts and status of others, for its Original Complaint against defendant Music Choice, alleges as follows:

## THE PARTIES

1. Stingray is a Delaware corporation, with its principal place of business at 2127 Ayrsley Town Blvd., Suite 202, Charlotte, North Carolina 28273.

2. Upon information and belief, Music Choice is a Pennsylvania general partnership, and has its principal place of business at 650 Dresher Rd. Horsham, Pennsylvania 19044, and is doing business in the Eastern District of Texas.

## JURISDICTION AND VENUE

3. These claims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1367, 15 U.S.C. § 1121. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that this is an action between citizens of different States where the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Music Choice because Music Choice has solicited business in the State of Texas, regularly transacted business in the State of Texas, and attempted to derive financial benefit from the residents of the State of Texas. Additionally, Music Choice has consented to personal jurisdiction in this district in *Music Choice v. Stingray Digital Group Inc.*, C.A. No. 2:16-cv-0586-JRG-RSP (E.D. Tex. June 6, 2016).

5. Venue is proper in this judicial district under 28 U.S.C. § 1391.

**MUSIC CHOICE'S PREDATORY AND ILLEGAL BUSINESS PRACTICES**

6. As discussed below, since at least as early as February 2014, and continuously to the present date, Music Choice has engaged in a smear campaign against Stingray with the goal of thwarting Stingray's ongoing and potential business relationships. Specifically, upon information and belief, Music Choice has made and continues to make false misrepresentations of fact regarding the nature, characteristics and qualities of Stingray and its products and services, to Stingray's existing and potential customers, with the goal of damaging Stingray's relationships with those customers and its business generally. Upon information and belief, Music Choice had made and continues to make these false statements in interstate advertising and promotion to a significant portion of Stingray's customers and potential customers with the knowledge that Stingray either has existing contracts with those customers or a reasonable probability of entering into contracts with those potential customers, and with the willful intent of causing injury to Stingray and influencing customers to buy Music Choice's goods and services. Music Choice's willful spreading of these false statements has materially influenced potential customers, proximately causing actual damage to Stingray.

7. Stingray is a leading business-to-business multi-platform music media solutions provider operating on a global scale, reaching an estimated 400 million Pay-TV subscribers (or

households) in 152 countries. Stingray offers products and services through which cable and other television providers (e.g., Internet-Protocol Television providers) deliver music and related services to end customers through their televisions and mobile devices.

8. To further its business, Stingray enters into contracts with Multiple Systems Operators (MSOs) or affiliates – typically cable operators – who integrate Stingray's products and services with their own services. Examples of Stingray's customers include, in the United States, AT&T and members of the National Cable Television Cooperative ("NCTC"). Stingray competes with Music Choice for the business of these companies and other MSOs, including CenturyLink, Cablevision, Comcast, Cox, Charter, and Time Warner.

9. Rather than compete lawfully, Music Choice has chosen to compete with Stingray using illegal means. Specifically, upon information and belief, since at least as early as February 2014, Music Choice has embarked on a campaign to damage Stingray's relationships and potential relationships with these affiliates by intentionally and willfully making false statements about the nature of Stingray and its products and services. In doing so, Music Choice has irreparably damaged Stingray's business, both monetarily and non-monetarily, as the statements have lowered customers' views of both Stingray and its products. As discussed further below, Music Choice's illegal activity has damaged Stingray's brand and reputation and caused Stingray to lose customers, make concessions in its contracts with customers, expend significant manpower and money in order to address the impact of the lies spread by Music Choice, and to incur other damage. Further, upon information and belief, Music Choice intended or should have realized that its false statements about Stingray and its products would cause Stingray such monetary and non-monetary losses.

10. Some of the affiliates for which Stingray and Music Choice compete include those who are members of the National Cable Television Cooperative. These members include, without limitation, Volunteer Wireless, Ben Lomand, Adams CATV Inc., American Broadband, Antietam Cable TV, Barbourville Utility Commission, Bay Creek Communications, Beaver Valley Cable Co., Bend Cable Communication, Braintree Electric Light Department, Bryan Municipal Utilities, BTC Communications, Butler-Bremer Communications, CableAmerica, Cable One, Cable TV of Rensselaer, Winaminc, Cass Cable TV, City of Opelika, Clear Creek Telephone & Television, Community Antenna Service, Inc., Community Cable & Broadband, Community Communications Company, commZoom, Comporium, Conneaut Telephone Co., Consolidated Cable Vision, Consolidated Communications, Conway Corporation, Dickey Rural Networks, Doylestown Cable TV, Easton Utilities, Eatel, Fidelity Communications, Garden Valley Telephone, Gardonville Cooperative Telephone Association, GEUS, Glasgow Electric Plant Board, Gridley Cable TV, GTA Teleguam, Guam Cablevision LLC, Hawaiian Telecom, Harris Broadband, Horizon Cable TV, Horry Telephone Cooperative, Hotwire Communications, HTC Communications, Independence Municipal Telecomm Utility, K2 Communications, KNOLOGY – The Media Co., Kraus Electronics Systems, City of Lebanon, Lennon Telephone Company, LUS Fiber, Mid-Hudson Cablevision, Midtel Cable, Murray Electric System, MUS FiberNET, Muscatine Power and Water, New Wave Communications, Nova Cable Management, Inc., OmniTel Communications, Orion Cablesystems, Packerland Broadband, Panhandle Telecommunications Systems, Inc., Partner Communications Cooperative, Pioneer Broadband, Polar Cablevision, Reliance Connects, Reserve Telecommunications, Ritter Communications, Scottsboro Electric Power Board, Service Electric Cable TV, Inc., Shenandoah Cable Television, Selco, SKT, Spencer Municipal

4

Utilities, Story Communications LLC, Surewest, Sweetwater Cable Television, Trans-Video Cable, Troy Cablevision, TSC Communications, Valparaiso Communication Systems, Vision Communications, West Alabama TV Cable Co., and XIT.

11. In February 2014, upon information and belief, David Del Beccaro, Music Choice's President and CEO, as well as possibly other officers and employees of Music Choice, provided NCTC members with a flier containing numerous false facts about Stingray's products and services (which at that time was called Galaxie). A copy of this flier is reproduced below.



Music Choice is the destination for your favorite music in every genre anytime, anywhere. With over 50 commercial-free music channels and a library of 14,000+ music videos available FREE On Demand 24 hours a day, Music Choice is second to none at delivering what music lovers crave and so much more.

## THE MOST COMPLETE NETWORK FOR MUSIC FANATICS!

### WITH MUSIC CHOICE YOU GET

- 51 music channels programmed by the best in the business
    - 50 commercial free music channels spanning every important genre for your audience
    - The all-new Music Choice PLAY – the ONLY network programmed for the Millennial music lover
- The Largest FREE Video On Demand Library
    - Over 14K titles from all the biggest artists
    - Over 1.3B views in '13
    - More than 3x larger than any other FVOD network
- TV-Everywhere with the all new musicchoice.com and the FREE Music Choice app
    - Listen to music channels, watch videos, and interact with the network from anywhere, anytime
    - Music Choice app supported on iOS, Android, and Kindle devices
- The go-to source for music programming
    - Original programming featuring exclusive access to the biggest stars and the soon to be stars
- Behind the scenes and red carpet access to some of the biggest events in music and pop culture
    - American Music Awards, Country Music Awards, and New Year's Rockin' Eve
- Engaged Social audience and turnkey social marketing executions
    - 1.3M Facebook and 53K Twitter followers
- Local ad avails on all Music Channels

### WITH GALAXIE

- 50 shuffle-play music channels
- Over half of all programming on each channel required to be from Canadian artists
- Extremely limited content available on-demand
- Consumer music app requires an additional monthly fee
- Galaxie app only supported on Android devices

6

12. Each of the "facts" included on the flier regarding Stingray's products and services is categorically false – and Music Choice knew or should have known them to be false. Upon information and belief, Music Choice disseminated this flier, which includes ominous skulls, lightning bolts and "X"s across the bottom, with the willful intent of damaging Stingray's business, including its existing contracts and prospective contracts with affiliates.

13. The statement on the flier that Stingray's products and services include only "50 shuffle-play music channels" is false and Music Choice knew or should have known it was false. Music Choice knew or should have known that, in February 2014 and continuing to the present, Stingray programmed a unique, expertly curated line-up of songs similar to Terrestrial Radio stations, taking into account the tastes of the domestic market end customer. Stingray offered over 200 custom music channels across more than 50 musical genres in order to appeal to all backgrounds and demographics, each channel having been programmed by an industry expert with broadcast and/or top music company experience. Today, Stingray's catalogue of expertly curated music channels exceeds 2,000 linear channels in over 100 musical genres, programmed by approximately 100 music experts around the globe.

14. The statement on the flier that "over half of all programming on each channel [is] required to be from Canadian artists" is also categorically false and Music Choice knew or should have known it to be false. There is no requirement, legal or otherwise, for Stingray to program Canadian artists in its Galaxie US (now Stingray) channel line-up, and Stingray does not favor Canadian artists in its US channel line-up, let alone make them more than half of the line-up.

15. The statement that "extremely limited content [is] available on-demand" is false and Music Choice knew or should have known it to be false. For example, Stingray offers

7

ATL 21431158v4

Concert TV which is popular through 45 million US households. Stingray also owns The Karaoke Channel property which is live in 55 million Video On Demand enabled households in the US. Since 2014, Stingray has extended its Music Video On Demand service to its domestic market affiliates. With the extension, Stingray now has 8 popular music centric VOD services available for its domestic market affiliates.

16. The statement that the "consumer music app requires a monthly fee" is also false and Music Choice knew or should have known it to be false. The Stingray consumer mobile music app, also known as the Galaxie Mobile app (at that time), is an integral part of its TV Everywhere offering and the end customer does NOT get charged if authenticated through any of its affiliate partners.

17. Lastly, the statement that the "Galaxie app [is] only supported on Android devices" is false and Music Choice knew or should have known it to be false. In February 2014 and up to the present date, the Galaxie app was available for download on Apple's iPhones from the Apple iTunes store. A simple search of the iTunes store demonstrates this to be true.

18. Since February 2014, upon information and belief, David Del Beccaro and others from Music Choice have been repeating these blatantly false statements to a large number of Stingray's existing and potential affiliate customers, with the willful intent of damaging Stingray's existing and prospective contracts with such affiliates. These affiliates include, without limitation, CCSA member affiliates, AT&T, Comcast, and many others. These potential affiliates include, without limitation, Century Link, Suddenlink, Cablevision, and many others.

19. By way of example, on October 13, 2015, members of Stingray's executive team met with representatives from Comcast at Comcast's offices in Philadelphia, PA. Prior to that meeting, upon information and belief, David Del Beccaro and others from Music Choice

conveyed the above-mentioned lies to individuals at Comcast. This was apparent from the fact that, during the October 13 meeting, the Comcast representatives questioned Stingray representatives regarding the facts contained on the flier. Stingray representatives worked diligently to establish that the representations made by Music Choice were patently false and intentionally deceptive. While Stingray was ultimately successful in signing a contract with Comcast, Stingray was forced to make several concessions in that contract as a direct and proximate result of the lies conveyed to Comcast by Music Choice. These concessions included providing additional guarantees to MSOs concerning relations with the major music labels.

20. Another example of Music Choice's willful dissemination of the above-mentioned false facts about Stingray's products and services is apparent from Stingray's discussions with Century Link, a potential customer. Since January, 2016, Stingray entered into discussions with Century Link regarding a potential contract under which Century Link would incorporate Stingray's products and services with its own products and services. However, Stingray has been unable to consummate the contract as a direct and proximate result of the above-mentioned false facts told to it by representatives of Music Choice.

21. In addition to losing several contracts, Stingray has suffered other monetary harm as a result of Music Choice's illegal activity, including having to expend substantial manpower in an attempt to remedy the harm caused to Stingray's brand and reputation. For example, Stingray has had to educate its sales force regarding how to address the lies disseminated by Music Choice and those salespeople have had to spend hundreds of hours meeting and speaking with affiliates and potential affiliates to address their unfounded concerns.

22. In addition, Stingray has had to make monetary concessions in several of its contracts with affiliates as a direct and proximate result of the lies spread by Music Choice,

9
ATL 21431158v4

including, for example, in its contracts with Comcast, BendBroadband, and potentially CenturyLink.

23. Stingray has also had to make non-monetary concessions in several of its contracts with affiliates as a direct and proximate result of the lies spread by Music Choice, including, for example, in its contracts with Comcast, BendBroadband, and potentially CenturyLink.

24. In sum, Music Choice's campaign of lies has been perpetrated with the willful and deliberate intent to damage Stingray's business, both existing and prospective, and that campaign has succeeded. Stingray's business has been irreparably damaged and will continue to be damaged unless Music Choice immediately ceases its illegal activity.

## FIRST CLAIM – UNFAIR COMPETITION, 15 U.S.C. § 1125

25. Stingray incorporates and realleges Counterclaim paragraphs 1 to 24 as though fully set forth herein.

26. As set forth above, upon information and belief, Music Choice has intentionally and unlawfully engaged in various acts of unfair competition, including by making false statements in its commercial advertising and promotional materials which misrepresent the nature, characteristics and qualities of Stingray's products and services.

27. Upon information and belief, Music Choice made the false statements in interstate marketing materials and promotional discussions to a significant portion of Stingray's actual and prospective customers, for the purpose of influencing those customers to instead purchase Music Choice's products and services.

28. Music Choice's false statements were material in that they influenced the purchasing decisions of Stingray's actual and prospective customers, directly and proximately causing Stingray to lose and/or make valuable concessions to actual and prospective customers.

29. Music Choice knew that the statements were false, or acted in reckless disregard of their truth or falsity.

30. As a direct and proximate result of Music Choice's false statements, Stingray has suffered and will continue to suffer monetary and non-monetary damages, including without limitation, lost profits.

31. Stingray therefore seeks judgment in its favor and an award of actual, incidental, and consequential damages as permitted by law, including punitive and treble damages, Music Choice's profits or gains resulting from its willful acts of unfair competition, and interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate.

## SECOND CLAIM – DEFAMATION

32. Stingray incorporates and realleges Counterclaim paragraphs 1 to 31 as though fully set forth herein.

33. As set forth above, upon information and belief, Music Choice has intentionally and unlawfully engaged in defamatory acts against Stingray, including by making false statements regarding the nature, characteristics and qualities of Stingray.

34. Upon information and belief, Music Choice has made the false statements to Stingray's actual and prospective customers, and the statements have damaged Stingray's reputation with such customers.

35. Upon information and belief, Music Choice knew that the statements were false, or acted in reckless disregard of their truth or falsity.

36. As a result of the damage to its reputation, Stingray has suffered and will continue to suffer monetary and non-monetary losses, including without limitation, lost profits from the loss of contracts and concessions in others.

37. Stingray therefore seeks judgment in its favor and an award of the actual, incidental, and consequential damages as permitted by law, and punitive damages, interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate.

## THIRD CLAIM – TRADE LIBEL

38. Stingray incorporates and realleges Counterclaim paragraphs 1 to 37 as though fully set forth herein.

39. As set forth above, upon information and belief, Music Choice has intentionally and unlawfully engaged in trade libel against Stingray, including by making false statements regarding the nature, characteristics and qualities of Stingray's products and services.

40. Upon information and belief, Music Choice has made false statements regarding the nature, characteristics and qualities of Stingray's products and services.

41. Upon information and belief, Music Choice knew that the statements were false, or acted in reckless disregard of their truth or falsity.

42. Upon information and belief, Music Choice intended or reasonably should have recognized that the false statements would result in Stingray's monetary loss.

ATL 21431158v4

43. As a direct and proximate result of Music Choice's false statements, Stingray has suffered and will continue to suffer monetary losses, including without limitation, lost profits from the loss of contracts and concessions in others.

44. Stingray therefore seeks judgment in its favor and an award of actual, incidental, and consequential damages as permitted by law, and punitive damages, interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate.

**FOURTH CLAIM – TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONSHIPS**

45. Stingray incorporates and realleges Counterclaim paragraphs 1 to 44 as though fully set forth herein.

46. As set forth above, upon information and belief, Music Choice has intentionally and tortiously interfered with Stingray's existing and prospective contractual relationships with customers for its goods and services.

47. Upon information and belief, Music Choice made false statements to Stingray's actual and prospective customers regarding the nature, characteristics and qualities of Stingray, as well as its products and services, with the intent to harm and to prevent Stingray's contractual relationships with such customers.

48. Upon information and belief, Music Choice has made the false statements with knowledge of Stingray's existing and prospective contractual relationships and without privilege or justification.

49. As a direct and proximate result of Music Choice's false statements, Stingray has suffered and will continue to suffer monetary and non-monetary losses, including without limitation, lost profits from the loss of contracts and concessions in others.

50. Stingray therefore seeks judgment in its favor and an award of actual, incidental, and consequential damages as permitted by law, and punitive damages, interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate.

## FIFTH CLAIM – COMMON LAW UNFAIR COMPETITION

51. Stingray incorporates and realleges Counterclaim paragraphs 1 to 50 as though fully set forth herein.

52. As set forth above, upon information and belief, Music Choice has intentionally and unlawfully engaged in various acts of unfair competition, including by making false statements in its commercial advertising and promotion which misrepresented the nature, characteristics and qualities of Stingray, as well as Stingray's products and services.

53. Upon information and belief, Music Choice has made the false statements in interstate marketing materials and promotional discussions to a significant portion of Stingray's actual and prospective customers, for the purpose of influencing those customers to instead purchase Music Choice's goods and services.

54. Music Choice's false statements were material in that they influenced the purchasing decisions of Stingray's actual and prospective customers, directly and proximately causing Stingray to lose and/or make concessions to actual and prospective customers.

55. Upon information and belief, Music Choice knew that the statements were false, or acted in reckless disregard of their truth or falsity.

56. As a direct and proximate result of Music Choice's false statements, Stingray's actual and prospective customers were actually misled as to the nature, characteristics, and qualities of Stingray's products and services.

ATL 21431158v4

57. As a direct and proximate result of Music Choice's false statements, Stingray has suffered and will continue to suffer monetary and non-monetary losses, including without limitation, lost profits from the loss of contracts and concessions in others.

58. Stingray therefore seeks judgment in its favor and an award of actual, incidental, and consequential damages as permitted by law, and punitive damages, interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

59. Stingray hereby demands a jury trial as to all issues triable by jury.

## EXCEPTIONAL CASE

60. This case is exceptional, and Stingray is entitled to fees and costs against Music Choice under 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

Stingray respectfully requests that this Court enter a judgment in its favor and grant the following relief:

    a) An order and judgment permanently enjoining Music Choice, together with its successors and assigns and all persons who act in concert with them or on their behalf, from engaging any of the unlawful, unfair and fraudulent business acts and practices and advertising described in the Counterclaims, and be required to take such actions and adopt such measures as are necessary to prevent Music Choice from engaging an any further such acts, practices and advertising;

    b) An order and judgment awarding Stingray the actual, incidental, and consequential damages as permitted by law, and punitive damages,

interest, attorneys' fees, costs and disbursements, and all other relief permitted by law that this Court deems appropriate, for the unlawful, unfair and fraudulent business acts and practices and advertising described in the Original Complaint;

c)  An order declaring this case exceptional and awarding Stingray its reasonable attorney's fees and costs in accordance with 15 U.S.C. § 1117; and

d)  Any other relief that the Court may deem appropriate and just under the circumstances.

ATL 21431158v4

Dated: August 30, 2016                    Respectfully submitted,

   */s/ Mary-Olga Lovett*

Mary-Olga Lovett (TX Bar # 00789289)
Rene Trevino (TX Bar # 24051447)
Aimee Housinger (TX Bar # 34083203)
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, TX 77002
Telephone: 713-374-3500
Facsimile: 713-754-7541
Email: LovettM@gtlaw.com
Email: TrevinoR@gtlaw.com
Email: HousingerA@gtlaw.com

Scott Bornstein (NY Bar # 2737492
Joshua L. Raskin (NY Bar # 2816783)
Allen Kassenoff (NY Bar # 2964575)
**GREENBERG TRAURIG, LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212-801-9200
Facsimile: 212-801-6400
Email: BornsteinS@gtlaw.com
Email: RaskinJ@gtlaw.com
Email: KassenoffA@gtlaw.com

**ATTORNEYS FOR STINGRAY MUSIC USA, INC.**

17
ATL 21431158v4

## **CERTIFICATE OF SERVICE**

   The undersigned certifies that the foregoing document was filed electronically and served via the Court's electronic filing system on all counsel who have consented to electronic service on this the 30th day of August, 2016.

                */s/ Bridgette Hopkins*
                Bridgette Hopkins

ATL 21431158v4