IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| STINGRAY MUSIC USA, INC., | § § | |
| v. | § § | Case No. 2:16-cv-964-JRG-RSP |
| MUSIC CHOICE | § § § § § § § | |

**MEMORANDUM ORDER**

Before the Court is the Stingray Music USA Inc.'s Motion to Consolidate Cases (Dkt. No. 27) and Music Choice's Motion to Change Venue (Dkt. No. 22.) Having considered both Motions, the Court is of the opinion that both should be **DENIED**; that the above-captioned case be **CONSOLIDATED** for all pretrial issues with the **LEAD CASE**, Case No. 2:16-cv-586; and that the parties appear for a telephonic status conference at **11:00 a.m.** on **March 31, 2017** to discuss coordination of this case with the MC Action (below).

**I.     Background**

On June 6, 2016, Defendant Music Choice filed a lawsuit against Stingray Digital Group, Inc. ("Stingray Digital") alleging that the Stingray Music system infringes four Music Choice patents. *See Music Choice v. Stingray Digital Group Inc.*, Case No. 2:16-cv-586-JRG-RSP (E.D. Tex.) ("the MC Action"). On August 12, 2016, Music Choice amended its complaint in the MC Action to add an additional patent. Stingray Digital answered the amended complaint on August 30, 2016 and denied that it infringes any of the asserted patents. It also asserted several counterclaims and stated that it does not conduct business in the United States and that only its

subsidiary, Stingray Music USA, Inc. ("Stingray Music"), the Plaintiff in this lawsuit, conducts business in this country. In response, on September 2, 2016, Music Choice amended its Complaint to include Stingray Music as a defendant in the MC Action.

On August 30, 2016, Stingray Music filed a complaint in this lawsuit against Music Choice alleging claims under 15 U.S.C. § 1125 (the Lanham Act) and various claims under state law including defamation, trade libel, tortious interference, and unfair competition. Music Choice filed a motion to dismiss and argued that Stingray Music's state law claims were barred under the statute of limitations under Texas law. In response, on November 3, 2016, Stingray filed an amended complaint that, among other things, clarified that Pennsylvania law applies to Stingray's state law claims.

## II. Stingray's Motion to Consolidate

Federal Rule of Civil Procedure 42(a) governs consolidation of cases. The rule provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." This Court has broad discretion to consolidate cases under Rule 42(a). *See Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973); *see also Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir.2011).

In general, Stingray Music argues that this case should be consolidated with the MC Action because they "are undeniably related, involving the same parties and products and overlapping witnesses and documents." (Dkt. No. 27 at 4.) Music Choice generally responds that the two actions are proceeding under different schedules, involve completely separate legal issues, will involve separate factual determinations, and therefore, consolidating the cases will only complicate matters for the Court and the parties. Having considered the parties' more detailed arguments,

2

the Court is of the opinion that the cases should be consolidated for pre-trial purposes only, for the following reasons.

*First*, these two cases clearly do not involve common questions of law. The MC Action solely involves questions of patent law, while this suit solely involves questions relating to unfair business practices.

*Second*, Stingray Music chose to file its claims as a separate lawsuit. Stingray Music claims that it would have preferred to file the claims in this action as counterclaims in the MC Action, but it could not because Stingray Music was not a defendant in the pending MC Action. But that explanation is not persuasive. The deadline to file Amended Pleadings in the MC Action is March 17, 2017. Stingray Music was named as a Defendant on September 2, 2016, and it does not argue that it could not have then filed the claims it asserts in this lawsuit affirmatively as counterclaims in the MC Action. To the extent Stingray Music would argue that it could not, because it had already filed the Complaint in this case, the Court would not find that explanation persuasive.

*Third*, the Court is persuaded that, while these cases will have similar and significant discovery issues and facts, consolidating this case into the MC Action for trial would not further the interests of judicial economy. The MC Action will largely focus on whether Stingray products infringe the patents asserted in that action, and liability will turn on whether the claimed elements in the asserted patents are in the accused Stingray products and services. By contrast, this action will focus on Music Choice's statements concerning Stingray products. Both cases will involve the same parties and focus on the functionality of Stingray products. It is likely that documents produced in the MC Action will be used in this action. It is also likely that there will be some overlap in the witnesses deposed and called at trial. Some of the disputes that arise between the

parties concerning discovery may be the same in both cases. These commonalities suggest that it would be highly efficient to have both proceedings continue in the same forum with the same judge or judges presiding. They also suggest that there would be efficiencies in having discovery in both cases proceed together (e.g., deposing witnesses common to both actions once and not twice). However, whether or not a joint trial is appropriate is an issue best decided closer to trial.

Accordingly, the Court is of the opinion that this case and the MC Action should be consolidated for pre-trial purposes only.

### III. Music Choice's Motion to Transfer

A district court can transfer a case to another district where the case might have been brought for "the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a).

The parties do not dispute that this case could have been brought in the Eastern District of Pennsylvania, and therefore, the question of whether this case should be transferred turns on whether Music Choice has shown the Eastern District of Pennsylvania to be "clearly more convenient" than the Eastern District of Texas. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). That analysis turns on a number of public and private interest factors, no one of which is given dispositive weight. *See Volkswagen I*, 371 F.3d at 203. The private factors include: (1) ease of access to evidence ("sources of proof"); (2) subpoena power over potential witnesses; (3) cost of attendance for willing witnesses; and (4) other practical problems. *Volkswagen II*, 545 F.3d at 315. The public factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws. *Volkswagen I*, 371 F.3d at 203. To meet its burden of showing that the Eastern District of Pennsylvania is clearly more convenient, Music Choice must show that these private and public interest factors on balance weigh in favor of transfer. *See id.*

Before the Court turns to the individual factors, the Court notes that these factors do not carry equal weight and that the *Volkswagen* factors are not exclusive. *Volkswagen II*, 545 F.3d at 315 ("[T]hey are not necessarily exhaustive or exclusive"). The Court may consider facts that do not expressly relate to the factors but are "in the interests of justice," 28 U.S.C. § 1404(a). Relevant here, the Court notes that Music Choice chose to file its patent infringement action here months before it became a defendant in the present case. This posture suggests that Music Choice may believe this venue to be favorable and convenient as a plaintiff in a patent lawsuit, but unfavorable and inconvenient as a defendant in a business tort suit. This weighs **against transfer.**

1. **Private Factors**

(1) **Sources of Proof**. Music Choice is Pennsylvania general partnership that has its principal place of business in Horsham, Pennsylvania. Music Choice documents are located in either Horsham or New York, and are more accessible in Pennsylvania than in Texas. However, given the ubiquity of electronic data, the Court gives less weight to these facts. The importance of the location of sources of proof is largely a fiction. Until the Fifth Circuit provides updated or different guidance, it is still considered as a factor in the transfer analysis; this Court is bound to apply *Volkswagen I* and *Volkswagen II*. Even so, that authority does not preclude this Court from diminishing the importance of this factor in the overall transfer analysis, especially where, as is the case here, the movant has identified no sources of proof that cannot be transferred electronically. Therefore, this factor weighs **slightly in favor of transfer.**

(2) **Subpoena Power**. Music Choice alleges that certain non-party witnesses at Comcast

5

and CenturyLink are located outside of this District. The CenturyLink witnesses are located in either Kansas or Colorado, outside the subpoena power of the both the Eastern District of Texas and the Eastern District of Pennsylvania. The Comcast witnesses are located in the Eastern District of Pennsylvania. However, these potential witnesses are unnamed. Speculative and unsubstantiated evidence is "accorded little weight." *Core Wireless Licensing S.a.r.l. v. LG Elecs.*, Inc., 2016 WL 4265034, at *3 (E.D. Tex. Aug. 12, 2016). Moreover, the availability of depositions within 100 miles of where these unnamed witnesses live and work further diminishes the importance of the subpoena power. Accordingly, this factor weighs **slightly in favor of transfer**.

**(3) Willing Witnesses.** Music Choice asserts that its relevant witnesses are located primarily in Horsham, Pennsylvania and to a lesser extent, New York. The Eastern District of Pennsylvania is more convenient for these witnesses. Music Choice also argues that the Eastern District of Pennsylvania would be more convenient for Stingray's witnesses. It appears that willing witnesses from Stingray will be located in or near Charlotte, North Carolina. Music Choice also identifies a key Stingray witness based in Montreal.

While the Eastern District of Pennsylvania may be closer and more convenient to the Stingray witnesses, the degree to which the Eastern District of Pennsylvania is more convenient than the Eastern District of Texas is minimal. Either venue would require significant travel. The Court also discounts the weight of the Music Choice witnesses in its analysis. Music Choice has not identified a single party witness that would be unique to this case. The potential Music Choice witnesses in this case will also be witnesses in the MC Action. Music Choice chose to file in this District. Having done so, Music Choice cannot now claim that having its witnesses attend trial in Marshall is a **significant** inconvenience. Accordingly, the Court also affords slight weight with

respect to the Music Choice witnesses.

On balance, the willing witnesses prong weighs **slightly in favor of transfer**.

**(4) Practical Problems**. Stingray Music submits that this factor weighs against transfer because the same parties are litigating the MC Action in this Court. The Court agrees. The majority of the identified party witnesses are the same in both cases. The Court presiding over each action will need to become familiar with the technology underlying the accused products. There will be some overlap in discovery, and should issues arise during discovery, they are better handled by the same Court which will have institutional knowledge regarding the case. *See Tivo Inc. v. Cisco Sys., Inc.*, No. 2:12-CV-311-JRG, 2012 WL 3307407, at *1 (E.D. Tex. Aug. 13, 2012) ("[T]his Court can avoid duplicative actions, depositions, and discovery, and will be able to coordinate common schedules appropriately to address streamlined disputes shared in all of these related cases."). There may also be overlap in issues concerning damages as the sales by the parties of their respective products are relevant in both cases.

In sum, this factor weighs **strongly against transfer**.

2. **Public Factors**

**(1) Administrative Difficulties** and **(4) Conflicts of Laws**. These factors are neutral.

**(2) Local Interests**. Music Choice's primary place of business is in the transferee district, and it is the site of at least one of the primary alleged wrongful acts. This factor weighs in favor of transfer, but again, the weight it carries is undermined by the fact that Music Choice chose to file its patent infringement in this Court. The same arguments vis-à-vis local interests could be made in the MC Action. This factor is neutral.

**(3) Familiarity of Governing Law.** In this action, Stingray Music asserts Pennsylvania state law claims. A federal court in Pennsylvania will likely have greater familiarity with the

7

governing law. This factor weighs **in favor of transfer.**

IV. **Conclusion**

The question regarding transfer is close. However, on balance, after carefully considering the *Volkswagen* factors and the equities in this case, Music Choice has not met its burden of showing the Eastern District of Pennsylvania is clearly more convenient. Specifically, the Court has given weight to the fact that Music Choice chose this Court as the forum for its patent lawsuit and the Court foresees that many of the issues between that lawsuit and this lawsuit will be interrelated. Accordingly, Defendants' Motion to Transfer Venue (Dkt. No. 12) is **DENIED**.

The Court is also of the opinion that in the interests of judicial economy and efficiency, this case and the MC Action should be consolidated. Therefore, the above-captioned case is hereby **ORDERED** to be **CONSOLIDATED** with the **LEAD CASE**, Case No. 2:16-cv-586. It is further **ORDERED** that the parties appear for a telephonic status conference at **11:00 a.m.** on **March 31, 2017** to discuss coordination of this case with the MC Action.

**SIGNED this 16th day of March, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE